## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

CUP OF TEA FLUSHING LLC, BSCT INC.,
BKDTCT INC., and LI ZHENG,

                      Plaintiffs,

    -against-

HK HEYCHA LIMITED, Xiaobin Xu,
Zhichao Liu and JOHN DOE 1-10, d/b/a
HEYTEA (fictitious name to be used until actual name
known),

                    Defendants.

---------------------------------------------------------------X

Civil Action No:

**FIRST AMENDED COMPLAINT**

Plaintiffs CUP OF TEA FLUSHING LLC, BSCT INC, BKDTCT INC, and LI ZHENG

("Mr. Lee") (collectively "Plaintiffs"), by their attorneys, Law Offices of Daniel D. Kim

(Daniel D. Kim, Esq., appearing), as and for their Complaint against defendants HK HEYCHA

LIMITED, and John Doe 1-10, (fictitious name to be used until the actual name is discovered)

(collectively "Defendants"), respectfully alleges as follows:

### NATURE OF ACTION

1.    This action arises from HK HEYCHA LIMITED's fraudulent and deceptive

business practices, including false representations regarding its registration status in New York,

multiple violations of the New York Franchise Sales Act, and an unlawful attempt to force

Plaintiffs to arbitrate disputes in China under Chinese law. HK HEYCHA LIMITED, a Hong

Kong limited company doing business as Hey Tea, solicited Mr. Lee's investment of over three

million dollars based on false assurances and subsequently obstructed the operation of multiple

franchise locations in bad faith.

2.    Plaintiffs seek rescission, compensatory damages exceeding three million

dollars, punitive damages, and injunctive relief to prevent further harm, including allowing the continued operation of the Flushing and Brooklyn locations and the opening of the Bayside, and provide Mr. Lee with the necessary equipment to set up the projects in Philadelphia and Austin until the resolution of this action.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) in that complete diversity of citizenship exists between the parties and the matter in controversy exceeds $75,000.00; and pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions herein occurred in this District.

4.      This Court has personal jurisdiction over Defendants pursuant to New York's long-arm statute, CPLR 302(a)(1), because Defendants have transacted substantial business within the State of New York by entering into franchise agreements, maintaining franchise locations, and conducting continuous and systematic business activities directed at New York residents. The exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment, as Defendants have purposefully availed themselves of the privilege of conducting business in New York.

## PARTIES

5.     Plaintiff Mr. Lee is a citizen of the U.S. and has been domiciled in New York.

6.     Plaintiff CUP OF TEA FLUSHING LLC is a New York Limited Liability Company, owned and managed by Mr. Lee, located at 36-56 Main St., Flushing, New York 11354, duly executed Franchise Agreement with HK HEYCHA LIMITED on December 1, 2023.

7.     Plaintiff BSCT INC. is a New York corporation, owned and managed by Mr.

Lee, duly established and performed construction at 4208 Bell Blvd., Bayside, New York 11361, and was ready to open Hey Tea franchise store based on the duly executed Franchise Agreement with HK HEYCHA LIMITED on July 8, 2024.

8.    Plaintiff BKDTCT INC. is a New York corporation, owned and managed by Mr. Lee, operating as a Hey Tea franchise store located at 52 Willoughby St., Brooklyn, New York, 11201, based on the duly executed Franchise Agreement with HK HEYCHA LIMITED on May 17, 2024.

9.    Upon information and belief, Defendant HK HEYCHA LIMITED is a Hong Kong limited company, d/b/a HEYTEA, located at 9/F MW Tower, No. 111 Bonham Strand Sheung Wan, Hong Kong, which used to maintain the website www.heytea.com.

10.    Upon information and belief, Defendant Xu, Xiaobin 徐晓彬 a/k/a Simon,  is a Citizen of China (or Hong Kong) and was working as a general manager of International Business Dept. of Defendant HK HEYCHA LIMITED, who executed the franchise agreement with Mr. Lee for the Brooklyn location on May 18, 2024, who also executed the Austin, Texas franchise agreement on June 20, 2024,

11.    Upon information and belief, Defendant Liu, Zhichao 刘智超 is a Citizen of China (or Hong Kong)  and was working as a director of Defendant HK HEYCHA LIMITED, who executed the franchise agreement with Mr. Lee for the project in Philadelphia, PA location on July 31, 2024, and who also executed the Bayside franchise agreement on July 11, 2024.

12.    Defendants John Doe 1-10, d/b/a HEYTEA (fictitious names to be used until actual names are discovered) are legal entities, individuals, independent contractors, and/or employees, servants, and agents of Defendant HK HEYCHA LIMITED who are Citizens of

China (or Hong Kong) directly involved in execution of the Flushing franchise agreement with Mr. Lee, and/or performed acts more fully described below.

13.     Hereinafter, Defendants HK HEYCHA LIMITED, Xu, Xiaobin 徐晓彬 a/k/a Simon, Liu, Zhichao 刘智超, and John Doe 1-10 shall be collectively referred to as "Defendants".

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

**a) Documents**

14.     The Federal Trade Commission (FTC) regulates franchises under the Franchise Rule (16 C.F.R. §§ 436.1-436.11), which imposes uniform pre-sale disclosure requirements. While there is no private cause of action under the FTC Rule, Defendants' failure to comply demonstrates a pattern of deceptive conduct in violation of the New York Franchise Sales Act (NY GBL Article 33).

15.     In 2007, the FTC amended the Franchise Rule, replacing the Uniform Franchise Offering Circular (UFOC) with the Franchise Disclosure Document (FDD). Despite this, Defendants provided Mr. Lee with a UFOC instead of a duly registered FDD, intending to mislead Plaintiffs into believing that they were compliant with New York and federal franchise laws. Plaintiffs are in possession of the Uniform Franchise Offering Circular (UFOC) provided by Defendants, which forms part of the basis of these allegations and is incorporated herein by reference.

16.     The introductory page ends with the following statement:

THE FRANCHISOR CAN NOT USE THE NEGOTIATING PROCESS TO PREVAIL UPON A PROSPECTIVE FRANCHISEE TO ACCEPT TERMS THAT ARE LESS FAVORABLE THAN THOSE SET FORTH IN THIS FRANCHISE OFFERING CIRCULAR.

17.    In Item 17 of UFOC, Defendants inserted the requirement for arbitration to held in Shenzhen, China, under Chinese law, but also stated as follows:

> "The foregoing choice of law should not be considered a waiver of any right conferred upon the franchisor or the franchisee by Article 33 of the General Business Law of the State of New York."

18.    The arbitration clause requiring disputes to be resolved in Shenzhen, China, under Chinese law is void under *NY GBL § 687(4)* as it attempts to waive Plaintiffs' rights under New York franchise law. The clause is both procedurally and substantively unconscionable, imposing excessive costs and foreign legal standards that deprive Plaintiffs of a fair opportunity to resolve disputes.

19.    Defendants unconscionably attempted to prevail upon Mr. Lee and his companies in bad faith by pressing Mr. Lee to accept less favorable terms by imposing a foreign forum and law.

20.    Article 33 Franchise, *NY CLS Gen Bus § 687(4)* states "Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law, or rule promulgated hereunder, shall be void."

21.    Defendants attempted to circumvent New York's franchise protections, making it void and unenforceable.

22.    The five Franchise Agreements that Mr. Lee executed with Defendants contained an Arbitration Clause under 17E, Chinese Law as the choice of law, and Consent to jurisdiction and forum selection in  Shenzhen, China. Plaintiffs refer to the five executed Franchise Agreements, which are in Plaintiffs' possession and incorporated herein by reference.

23.    17F. (Governing Law) states:

THIS AGREEMENT, THE FRANCHISE, AND ALL CLAIMS ARISING FROM THE RELATIONSHIP BETWEEN US AND YOU WILL BE GOVERNED BY LAWS OF PEOPLE'S REPUBLIC OF CHINA, REGARD TO ITS CONFLICT OF LAWS RULES, EXCEPT THAT ANY STATE OR NATIONAL LAW REGULATING THE OFFER OR SALE OF FRANCHISES OR GOVERNING THE RELATIONSHIP OF A FRANCHISOR AND ITS FRANCHISEE WILL NOT APPLY UNLESS ITS JURISDICTIONAL REQUIREMENTS ARE MET INDEPENDENTLY WITHOUT REFERENCE TO THIS SECTION. NOTWITHSTANDING THE FOREGOING, THIS SECTION DOES NOT WAIVE THE APPLICATION OF CALIFORNIA FRANCHISE RELATIONSHIP ACT (CALIFORNIA BUSINESS AND PROFESSIONS CODE 20000 – 20044)

24.    This clause acknowledges that so long as Plaintiffs can establish an independent basis for jurisdiction in New York, then the choice of law (Chinese law) would not apply to the extent that it conflicts with U.S. or New York franchise laws.

25.    In addition to Defendants' contacts with Plaintiffs in New York, Defendants have caused to open multiple places of HEY TEA in New York, such as 1565 Broadway ("Heytea Taking Over Swarovski's Times Square Store" dated July 30, 2024 at https://www.isarealtygroup.com/in-the-news/https/ commercialobservercom /2024/07 /heytea-swarovskis-times-square-1565-broadway). Thus, there is an independent jurisdiction exists in New York since Defendants have established a continuous and systematic business presence within the State of New York, including but not limited to maintaining franchise locations, conducting substantial business activities, and engaging in marketing and promotional efforts targeted at New York residents. Accordingly, New York laws should apply pursuant to 17F of the Franchise Agreement.

26.    Moreover, Defendants have filed trademark protection for HEYTEA and reaped the benefits of U.S. protective laws in New York under its serial number 90344856.

27.    17E (Arbitration Clause), which was designed to force Plaintiffs to arbitrate in China, also fails because it states an essential provision as follows:

Notwithstanding the foregoing, if any court or arbitrator determines that all or any part of the preceding sentence is unenforceable with respect to a dispute, controversy or claim that otherwise would be subject to arbitration under this Section, then all parties agree that this arbitration clause shall not apply to that dispute, controversy or claim and that such dispute, controversy or claim shall be resolved in a judicial proceeding in accordance with the dispute resolution provisions of this Agreement.

28.     This provision provides Plaintiffs' direct pathway to a declaratory judgment action to declare the arbitration clause violates Article 33 Franchise, *NY CLS Gen Bus § 687(4)*, which protects Plaintiffs from waiving their rights under New York franchise law.

29.     Furthermore, limiting Plaintiffs' punitive or exemplary damages should be declared void based on a lack of mutuality in the arbitration clause. This clearly is one-sided and lacks mutual obligations.

30.     The arbitration clause in Section 17E is both procedurally and substantively unconscionable. Procedurally, it was presented in a standard form contract without meaningful opportunity for negotiation. Substantively, it imposes excessive costs and requires arbitration in a foreign jurisdiction under unfamiliar legal standards, effectively denying Plaintiffs a fair opportunity to resolve disputes.

31.     Likewise, 17G (Consent to Jurisdiction) is void and unenforceable pursuant to *NY CLS Gen Bus § 687(4)*. New York law expressly prohibits any condition, stipulation, or provision that purports to waive compliance with any part of the law governing franchise relationships within the State of New York. Defendants should not have compelled Plaintiffs to waive the protection afforded by New York's franchise laws, rendering the clause null and void.

32.     Enforcement of the forum selection clause in Item (Section) 17G would contravene the strong public policy of New York, in addition to *NY CLS Gen Bus § 687(4)*,

which seeks to protect franchisees operation within the state by ensuring that disputes involving New York franchises are adjudicated under New York law and New York courts.

**b) Defendants' Deceptive Practice**

33.    On or about June 28, 2024, Defendants, through Krystal Huang, HeyTea Business Development Supervisor, sent emails to Mr. Lee welcoming franchise relationships for Mr. Lee's three locations,  Brooklyn, New York,  Flushing, New York, and Austin, Texas. The emails addressed Mr. Lee as a "Heytea Partner" and claimed that they are excited to provide "preferential treatment."

34.    On or about August 5, 2024, Defendant, again through Krystal Huang, sent three emails to Mr. Lee confirming their establishment of a franchise relationship between HK HEYCHA LIMITED with Dr. Lee's two other entities in Bayside, New York, and Philadelphia, PA. with "details of preferential treatment."

35.    Shortly thereafter, on September 11, 2024, Defendants forwarded the Notice of Termination of Franchise Agreement to Mr. Lee's Brooklyn location owned by Plaintiff BKDTCT INC. The copy of this Notice of Termination is annexed hereto as Exhibit "A" and is incorporated herein by reference.

36.    On October 28, 2024, Defendants generated a Notice of Termination of all five franchise agreements to be effective immediately. The copy of this Notice of Termination is annexed hereto as Exhibit "B" and is incorporated herein by reference. This Notice of Termination letter, however, directed Plaintiffs to shut down the business operations on November 4, 2024, without providing reasonable steps and methods to cure the alleged violations. Plaintiffs have not warned or defaulted for financial obligations at any time before this Notice of Termination.

37.     Mr. Lee is the pioneer and intended to be one of the principal owners of the PACTEA INC project, which he was going to set up as a franchisee in PA Chinatown. Mr. Lee was prohibited from building out the Hey Tea franchise business in PA Chinatown as a result of the Defendants' termination notice dated October 28, 2024

38.     Mr. Lee is also the pioneer and intended to be one of the principal owners of the AUCT INC project, which he was going to set up as a franchisee in Austin, Texas. Mr. Lee was prohibited from building out the Hey Tea franchise business in Austin, Texas, as a result of the Defendants' termination notice dated October 28, 2024.

39.     Accordingly, on November 4, 2024, Plaintiffs' counsel rejected Defendants' Notice of Termination for their violations under *CLS Gen Bus. § 683, et seq*. and case laws of New York and federal laws. Plaintiffs' counsel demanded that the franchisor disclose the name and address of HK HEYCHA LIMITED's designated process server in New York.

40.     On November 25, 2024, HK HEYCHA LIMITED's counsel forwarded their client's October 28, 2024, letter without identifying its designated process server in New York. There is no designated process server in New York for HK HEYCHA LIMITED, the alleged Hong Kong-based business entity selling franchise relationships and business in New York.

**c) Damages**

41.     Despite warnings and a written notice made by Plaintiffs' counsel, Defendants refused to provide the essential equipment to operate HEY TEA stores in Bayside, New York and set up the PA project and the Texas project. As such, Plaintiffs' damages are continuing, and they will lose their investments and face irreparable harm.

42.     The chart below shows the Plaintiffs' partial damages, which are continuing.

| Location | Expense Category (Before Opening) | Amount | Renovation Details | Unit Price ($) |
|---|---|---|---|---|
| | Store Renovation | $682,000.00 | Renovation Cost Breakdown | |
| | Equipment Purchases | $60,000.00 | Renovation Permits / Blueprint Design | $35,000.00 |
| | Inventory & Supplies | $188,979.82 | LEE SALARY (6 Month) | $60,000.00 |
| | Rent(From Dec.2023 Until Opening 4/28/2024) $18000 Per Month | $90,000.00 | Refrigeration unit | $42,500.00 |
| Flushing Currently Operating | Rent Deposit | $72,000.00 | Renovation Labor (Primary Contractor) | $280,000.00 |
| | Utilities / Management Fees | $9,000.00 | Renovation Labor (Electrical, Plumbing) | $120,000.00 |
| | Attorney Fees & Licensing Fees | $9,500.00 | New Air Conditioning Replacement | $14,500.00 |
| | | $30,000.00 | | |
| | Employee Training in USA | $45,500.00 | Purchase from Designated Heytea Supplier | $80,000.00 |
| | Heytea Royalty (Royalty Waiver for Two Stores Out of Five | $38,000.00 | Ocean Freight Charges | $50,000.00 |
| | Securing Store Location | $20,000.00 | | |
| | Miscellaneous ( Real Estate Agent Fees,Supplies, Gas ) | $18,950.00 | | |
| | **Total** | **$1,263,929.82** | | |

| Location | Expense Category | Amount | Renovation Details | Unit Price ($) |
|---|---|---|---|---|
| | Store Renovation | $312,000.00 | Renovation Cost Breakdown | |
| | Equipment Purchases | $46,284.52 | Renovation Permits / Blueprint Design | $19,000.00 |
| | Inventory & Supplies | $58,000.00 | LEE Salary (4 Month) | $40,000.00 |
| Brooklyn Currently Operating | Rent (From July Until Opening 9/14/2024) $11000 per Month | $33,000.00 | Refrigeration unit | $11,000.00 |
| | Rent Deposit | $44,000.00 | Renovation Labor (Primary Contractor) | $123,000.00 |
| | Utilities / Management Fees | $6,500.00 | Renovation Labor (Electrical, Plumbing) | $24,500.00 |
| | Attorney Fees & Licensing Fees | $8,500.00 | New Air Conditioning Replacement | $14,500.00 |
| | Employee Training in China | $30,000.00 | Purchase from Designated Heytea Supplier | $50,000.00 |
| | Employee Training in USA | $20,876.00 | Material / Sign from China | $30,000.00 |
| | 2 Employee Form Heytea Accommodation and Airfare | $8,000.00 | Ocean Freight Charges | $20,000.00 |
| | Heytea Royalty (Royalty Waiver for Two Stores Out of Five | $38,000.00 | | |
| | Securing Store Location | $20,000.00 | | |
| | Miscellaneous ( Real Estate Agent Fees,Supplies, Gas ) | $30,000.00 | | |
| | **Total** | **$559,160.52** | | |

| Location | Expense Category | Amount | Renovation Details | Unit Price ($) |
|---|---|---|---|---|
| | Store Renovation | $203,000.00 | Renovation Cost Breakdown | |
| | Equipment Purchases | $25,000.00 | Renovation Permits / Blueprint Design | $0.00 |
| | Inventory & Supplies | | LEE Salary (2 Month) | $20,000.00 |
| | Rent (From July - Nov) $4500 Per Motnh | $22,500.00 | | |
| Bayside (Not Yet Open) | Rent Deposit | $13,500.00 | Renovation Labor (Primary Contractor) | $105,000.00 |
| | Utilities / Management Fees | $3,500.00 | Renovation Labor (Electrical, Plumbing) | $18,000.00 |
| | Attorney Fees & Licensing Fees | $5,500.00 | Purchase from Designated Heytea Supplier | $40,000.00 |
| | Heytea Royalty (Royalty Waiver for Two Stores Out of Five | $38,000.00 | Ocean Freight Charges | $20,000.00 |
| | Securing Store Location | $20,000.00 | | |
| | Miscellaneous ( Real Estate Agent Fees,Supplies, Gas ) | $25,000.00 | | |
| | Business Buyout for Lease Acquisition | $90,000.00 | | |
| | **Total** | **$446,000.00** | | |

| Philadelphia (Not Yet Open) | Store Renovation | $244,500.00 | Renovation Cost Breakdown | |
| --- | --- | --- | --- | --- |
| | Equipment Purchases | $38,000.00 | Renovation Permits / Blueprint Design | $19,500.00 |
| | Inventory & Supplies | | | |
| | Rent(From July to Nov) $7000 Per Month | $35,000.00 | | |
| | Rent Deposit | $14,000.00 | Renovation Labor (Primary Contractor) | $120,000.00 |
| | Utilities / Management Fees | $5,500.00 | Renovation Labor (Electrical, Plumbing) | $35,000.00 |
| | Attorney Fees & Licensing Fees | $3,500.00 | Purchase from Designated Heytea Supplier | $45,000.00 |
| | Securing Store Location | $20,000.00 | Ocean Freight Charges | $25,000.00 |
| | Miscellaneous ( Real Estate Agent Fees,Supplies, Gas, Hotel ) | $5,500.00 | | |
| | Business Buyout for Lease Acquisition | $270,000.00 | | |
| | **Total** | **$636,000.00** | | |

| Austin TX (Not Yet Open) | Store Renovation | $350,000.00 | Renovation Cost Breakdown | |
| --- | --- | --- | --- | --- |
| | Equipment Purchases | $40,000.00 | Renovation Permits / Blueprint Design | $15,000.00 |
| | Inventory & Supplies | | | |
| | Rent (From Aug to Nov) $12000 Per Month | $48,000.00 | | |
| | Rent Deposit | $24,000.00 | Renovation Labor (Primary Contractor) | $220,000.00 |
| | Utilities / Management Fees | $4,500.00 | Renovation Labor (Electrical, Plumbing) | $30,000.00 |
| | Attorney Fees & Licensing Fees | $4,500.00 | Purchase from Designated Heytea Supplier | $60,000.00 |
| | Securing Store Location | $20,000.00 | Ocean Freight Charges | $25,000.00 |
| | Miscellaneous ( Real Estate Agent Fees,Supplies, Gas, Hotel, Flight ) | $8,000.00 | | |
| | Business Buyout for Lease Acquisition | $300,000.00 | | |
| | **Total** | **$799,000.00** | | |

43.    Mr. Lee paid $200,000 to secure an additional ten locations.

44.    The total amount of damages in the calculation of the above is $3,904,090.34 and is accumulating.

**Document Access:** Plaintiffs respectfully advise the Court that due to the volume and foreign-language nature of certain key documents (including the UFOC and franchise agreements), these materials are incorporated herein by reference but are not physically attached to this Complaint. Plaintiffs will promptly make these documents available to Defendants and the Court upon request or as directed during discovery.

## FIRST CAUSE OF ACTION
### (Fraudulent Inducement)

45.    Defendants misrepresented HK HEYCHA LIMITED's UFOC as if it were FDD duly registered with NY AG's office. Specifically, Defendants misrepresented 17E (Arbitration Clause), 17F. (Governing Law), and 17G (Consent to Jurisdiction) were approved

by the NY AG's office and, therefore, enforceable in New York.

46.     Defendants knowingly misrepresented HK HEYCHA LIMITED's franchise status as a registered status in New York and that they were required to present UFOC to Plaintiffs in order to induce Plaintiffs to sign five franchise agreements.

47.     Defendants' misrepresentations were implicated by their presentation of UFOC and are distinct from their representation stated in the franchise agreement which refers to FDD, which Plaintiffs never received,  and Defendants knowingly or recklessly offered Plaintiffs to accept arbitration clause in China, Choice of Chinese law, and jurisdiction and forum selection of China which clearly are less favorable to Plaintiffs than what would be standard or expected under U.S. law for the U.S. based franchisees, contrary to their introductory statement as stated above ¶¶ 18, 19.

48.     Defendants had reason to know their representations were false since Defendant HK HEYCHA LIMITED registered or attempted to register in California on March 21, 2013.

49.     Defendants had no intention to honor their representation made under Item 17 of UFOC because they knew Plaintiffs would not waive their rights conferred by Article 33 of the General Business Law of the State of New York.

50.     Defendants deliberately made the misrepresentations as if their UFOC and Section 17 of the franchise agreement were registered with NY AG's office, legally enforceable, and binding, but they would rather work out the issues in the U.S. without litigation. Defendants' misrepresentation that HK HEYCHA LIMITED is registered implied that they would honor Plaintiffs' rights to invoke the benefits of New York franchise laws.

51.     Accordingly, Plaintiffs relied to their detriment on Defendants' misrepresentations and executed the franchise agreement. Mr. Lee made substantial

investments solely based on Defendants' misrepresentations.

52.    Mr. Lee had no reason to doubt the sincerity of Defendants' promise to work out any disputes because Mr. Lee had his attorneys duly register Mogetee FDD and had worked out disputes with franchisees prior to joining Heytea which is a worldwide franchise business with much large scale than Mogetee.

53.    As a direct and proximate result of relying on Defendants' misrepresentations inducing Plaintiff to enter into the franchise relationship with HK HEYCHA LIMITED, Plaintiffs were damaged in excess of, and damages are continuing.

54.    The aforesaid damages are actual out of pocket losses, which are continuing since Defendants refuse to provide the necessary equipment to run the franchise operations in Bayside and to set up the projects in Philadelphia, and Texas.

55.    As a result of Defendants' fraudulent inducement of the parties' franchise relationships, Plaintiffs are entitled to an award of damages in an amount to be proved at trial, not less than $3,904,90.34.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial by jury but no less than $3,904,090.34, together with prejudgment interest at the statutory rate, post-judgment interest at the statutory rate, punitive damages, and award of Plaintiffs' attorneys' fees, and such other and further relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Violation of New York Franchise Sales Act – Unregistered FDD)

56.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "55" of this Complaint under the same force and effect as if fully set forth herein.

57.    *NY CLS Gen Bus § 683* states:

1. It shall be unlawful and prohibited for any person to offer to sell or sell in this state any franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an "offering prospectus" concerning the contemplated offer or sale, which shall contain the information and representations set forth in and required by this section.

2. The offering prospectus sought to be registered with the department of law shall be filed with the department, accompanied by an application for registration on forms prescribed by the department, and shall contain the following:
(b)  The franchisor's principal business address and the name and address of its agent in this state authorized to receive process.
(e)  A statement as to whether the franchisor and its principals, officers, partners, directors, or any other person identified in the application for registration:
(j)  A statement of the conditions under which the franchise agreement may be terminated or renewal refused or repurchased at the option of the franchisor.
(s)  A representation that the registered prospectus does not knowingly omit any material fact or contain any untrue statement of a material fact.
(u)  Other information or such additional disclosures related to the offer or sale of the franchise as the department of law may prescribe by rules or regulations promulgated under section six hundred ninety-four of this article as will afford prospective franchisees an adequate basis upon which to found their judgment.

7. Unless otherwise provided by regulation issued by the department, applications to register the offering prospectus required by subdivision one of this section shall be filed with the department of law at its office in the city of New York prior to the offering of the franchise involved. **No offer, advertisement, or sale of such a franchise shall be made in or from the state of New York until the department has issued to the franchisor or other offeror a letter stating that the offering prospectus sought to be registered has been accepted for filing and filed.**

11. No offer of a franchise shall be made except by the offering prospectus registered with the department of law pursuant to this section.

58.    *NY CLS Gen Bus § 683.3* states, "It is unlawful for any person to violate any provision of this article[] or any condition to the effectiveness of the registration of an offering prospectus [FDD].

59.    *NY CLS Gen Bus § 683.8(c)* explicitly prohibits a franchisor from accepting any consideration prior to issuance of a duly registered FDD to be reviewed by a franchisee at least

ten days before the execution of the franchise agreement.

60.     Defendants also violated *NY CLS Gen Bus § 687(4)* by including provisions in the Franchise Agreement that required Plaintiffs to waive compliance with New York franchise laws, including the arbitration, governing law, and forum selection clauses mandating dispute resolution in China under Chinese law. These provisions are void and unenforceable under New York law.

61.     Defendants offered an unregistered, deceptive, and one-sided UFOC to Mr. Lee and unlawfully took funds stated on the chart above ¶ 42 and caused Plaintiffs to spend funds therein.

62.     Defendants' violations were intentional, willful, and material. HK HEYCHA LIMITED attempted to register in California on March 21, 2013. As such, Defendants were fully aware of the requirements in New York. Defendants have been vigorously marketing and advertising via the Internet in New York and other states in the U.S. without even appointing an agent for service for any lawsuit against them in New York in violation of *NY CLS Gen Bus § 683.2(b)*.

63.     Defendants failed to respond to Plaintiffs' counsel request on November 4, 2024, to disclose HK HEYCHA LIMITED's designated process server in New York. Instead, they maintain that their UFOC and unregistered franchise agreement are binding. They insisted that Mr. Lee ought to travel to China to make any claim under Chinese law.

64.     *NY CLS Gen Bus § 691* provides Civil remedies as follows:

> 1. A person who offers or sells a franchise in violation of section six hundred eighty-three 683, six hundred eighty-four or six hundred eighty-seven of this article is liable to the person purchasing the franchise for damages and, if such violation is willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.

3. A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer.

**WHEREFORE,** Plaintiffs demand judgment that:

a.      Defendants be ordered to produce equipment necessary to open and operate locations in Bayside and provide Mr. Lee with the necessary equipment to set up the projects in Philadelphia and Austin.

b.      Defendants be enjoined permanently and during the pendency of this action from disrupting supplies necessary to operate Plaintiffs' businesses.

c.      Recission of the five franchise agreements or compel HK HEYCHA LIMITED to duly register with the NY AG's office with choice of law and forum to be designated in New York, and Defendants be directed to account and to pay over to Plaintiffs all damages with statutory interest pursuant to *NY CLS Gen Bus § 691.1*;

d.      Defendants be directed to pay Plaintiffs' loss of economic opportunities.

e.      Compensatory Damages, Consequential Damages, Special Damages to be awarded by Jury pursuant to aforesaid chart in ¶ 42, and Attorneys' fees, costs pursuant to *NY CLS Gen Bus § 691.1*, and interest to be awarded by the Court;

f.      Punitive damages for Defendants' intentional and fraudulent conduct; and

g.      Plaintiff be awarded such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### (Fraudulent Concealment)

65.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs

"1" through "64" of this Complaint under the same force and effect as if fully set forth herein.

66.    Defendants failed to disclose material information concerning the specific procedures, methodologies, and requirements for terminating franchise relationships for causes other than financial defaults, including any opportunity for good faith discussions or to contest the termination decisions.

67.    Defendants knowingly concealed their intent and purported right to arbitrarily terminate the franchise relationships without providing Plaintiffs an opportunity to challenge the terminations in New York, insisting instead that all disputes be resolved exclusively in China under Chinese law.

68.    Defendants had a duty to disclose complete and accurate information about termination procedures and Plaintiffs' right under New York Franchise law, Article 33, particularly in light of the statements in UFOC that the choice of law clause would not waive any rights conferred by Article 33. Despite this, Defendants rejected Plaintiffs' rights to dispute termination issues in New York. Defendants knowingly withheld this information to mislead Plaintiffs into believing they retained the right to dispute terminations in New York.

69.    Defendants knew that Mr. Lee would not have signed the five Franchise Agreements or made the substantial investments outlined in ¶ 42 if he had known that Defendants intended to deny him his rights under New York franchise laws.

70.    Defendants intentionally concealed Plaintiffs' rights under New York franchise laws in the UFOC to mislead and induce Plaintiffs to pay all fees, commissions, royalties, and make substantial investments as outlined in ¶ 42.

71.    As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs were misled into tendering substantial fees and making investments based on the

false understanding that they retained their rights under New York franchise laws.

72.    Plaintiffs were fraudulently induced to enter into the five Franchise Agreements due to Defendants' intentional concealment of material information, resulting in damages exceeding $3,904,090.34, which continue to accrue.

**WHEREFORE,** Plaintiffs demand judgment against Defendants following a jury trial as follows:

a.    Compensatory damages exceeding $3,904,090.34, plus prejudgment interest at the statutory rate.

b.    Punitive damages for Defendants' intentional and malicious conduct.

c.    Reasonable attorneys' fees and costs as permitted by law.

d.    Such other and further relief as the Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (Declaratory Judgment and Injunctive Relief – 28 U.S.C.§2201)

73.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "72" of this Complaint under the same force and effect as if fully set forth herein.

74.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and obligations under the Franchise Agreements. Specifically, this controversy involves the validity and enforceability of the following provisions: (i) The arbitration clause (Section 17E) mandating arbitration in Shenzhen, China, under Chinese law; (ii) The governing law clause (Section 17F) requiring the application of Chinese law; (iii) The forum selection clause (Section 17G) requiring all disputes to be resolved exclusively in China.

75.    Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a judicial declaration that:

a.    The arbitration clause (Section 17E), governing law clause (Section 17F), and forum selection clause (Section 17G) in the Franchise Agreements are void and unenforceable under NY GBL § 687(4), which prohibits any condition or provision that purports to waive compliance with New York franchise laws.

b.    In the alternative, that the entire Franchise Agreements are void and unenforceable under *NY CLS Gen Bus §§ 683, 383.3. 683.8(c),* and *687(4)* due to Defendants' failure to register the Franchise Disclosure Document (FDD) and the use of an unlawful and unregistered UFOC to induce Plaintiffs to enter into the agreements and collected fees.

76.    Mr. Lee will suffer immediate and irreparable harm if Defendants continue to withhold the necessary equipment required to operate franchise locations in Bayside, New York; Philadelphia, Pennsylvania; and Austin, Texas. Monetary damages alone cannot adequately compensate for the loss of business relationships with Mr. Lee's partners, the damage to Mr. Lee's business reputation, the disruption to employees who were hired to work for Mr. Lee, and the loss of market presence that will result.

77.    Plaintiffs are likely to succeed on the merits of their claims, particularly with respect to the void nature of the arbitration, governing law, and forum selection clauses under NY GBL § 687(4).

78.    Plaintiffs are likely to succeed on the merits of their claims, particularly with respect to the void nature of the arbitration, governing law, and forum selection clauses under *NY CLS Gen Bus § 687(4)*, as well as Defendants' violations of  *NY CLS Gen Bus § 683, § 683.3,* and *§ 683.8(c)*, which prohibit the offer or sale of franchises in New York without proper registration and compliance with the disclosure requirements mandated by New York law.

79.     The balance of equities tips decidedly in favor of Plaintiffs, as requiring Defendants to supply equipment pending the outcome of this lawsuit imposes a minimal burden on Defendants compared to the substantial and irreparable harm to Plaintiffs' businesses.

80.     Granting injunctive relief serves the public interest by preventing unlawful conduct by franchisors and ensuring compliance with New York franchise laws designed to protect franchisees.

81.     Accordingly, Plaintiffs seek a preliminary and permanent injunction compelling Defendants to: (i) Immediately provide the necessary equipment to operate the franchise locations in Bayside, Philadelphia, and Austin; and (ii) Refrain from taking any actions to disrupt or prevent the operation of these locations pending the outcome of this lawsuit.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

a.      A judicial declaration that Sections 17E, 17F, and 17G of the Franchise Agreements are void and unenforceable under _NY CLS Gen Bus § 687(4)_.

b.      A judicial declaration that New York law governs the Franchise Agreements and that Plaintiffs are entitled to litigate disputes in New York courts.

c.      A preliminary and permanent injunction compelling Defendants to provide the necessary equipment for the Bayside and the PA and Texas projects and prohibiting any disruption of their operations pending the outcome of this lawsuit.

d.      Reasonable attorneys' fees and costs as permitted by law.

e.      Such other and further relief as the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

82.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "81" of this Complaint under the same force and effect as if fully set forth herein.

83.     Under New York law, each of the five franchise agreements executed by and between Mr. Lee and HK HEYCHA LIMITED, as well as the UFOC and the ongoing franchise relationship between the parties, included an implied covenant of good faith and fair dealing. This implied covenant required Defendants to act in a manner that would not deprive Plaintiffs of the benefits of the franchise relationship or frustrate the purposes of the agreements both before and after execution.

84.     Defendants breached the implied covenant of good faith and fair dealing by engaging in acts intended to deprive Plaintiffs of the benefits of the Franchise Agreements, including but not limited to: (i) arbitrarily and unlawfully terminating the franchise agreements without legitimate cause and without providing Plaintiffs an opportunity to challenge the terminations in New York; (ii) withholding necessary equipment required to operate the franchise locations in Bayside, New York; to set up the PA and Texas projects to pressure Plaintiffs into abandoning their rights; (iii) imposing unlawful and one-sided arbitration, governing law, and forum selection mandating arbitration in China to prevent Plaintiffs from asserting their rights under New York law; and (iv) misrepresenting the registration status of the Franchise Disclosure Document (FDD) and presenting an unlawful and unregistered UFOC to induce Plaintiffs to sign the agreements.

85.     Defendants' actions were undertaken in bad faith and with the intent to deprive Plaintiffs of the rights and benefits conferred by the franchise agreements in violations of *NY CLS Gen Bus §§ 683, 687,* and other applicable laws.

86.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and continue to suffer ongoing and accumulating damages exceeding $3,904,090.34, including but not limited to loss of business investments, loss of business opportunities, and damage to business reputation.

**WHEREFORE,** Plaintiffs demand judgment that:

a.      An order compelling Defendants to provide the equipment necessary to open and operate locations in Bayside, Philadelphia, and Austin.

b.      A preliminary injunction, upon Order to Show Cause, prohibiting Defendants from disrupting supplies necessary to operate Plaintiffs' businesses during the pendency of this action.

c.      an accounting and payment of all damages owed to Plaintiffs with statutory interest pursuant to *NY CLS Gen Bus § 691.1*.

d.      Compensation for loss of economic opportunities caused by Defendants' conduct.

e.      Compensatory Damages, Consequential Damages, Special Damages to be awarded by Jury, plus Attorneys' fees, costs and interest to be awarded by the Court as permitted by law.

f.      Punitive damages for Defendants' intentional and fraudulent conduct.

g.      Such other and further relief as the Court deems just and proper.

<u>**SIXTH CAUSE OF ACTION**</u>
<u>**(Tortious Interference with Contract)**</u>

87.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "86" of this Complaint under the same force and effect as if fully set forth herein.

88.     At the time Mr. Lee executed the Franchise Agreements with HK HEYCHA LIMITED, he was the franchisor of Mogetee in the United States and had a valid and enforceable franchise relationship with Mogetee in China under Master Franchise Agreement.

89.     Defendants were aware of Mr. Lee's position as the Mogetee franchisor and understood that Mr. Lee would need to terminate his relationship with Mogetee to pursue the Heytea franchise opportunity.

90.     Defendants intentionally induced Mr. Lee to terminate his Mogetee franchise by misrepresenting their intentions and compliance with New York franchise laws, including but not limited to falsely claiming that they were duly registered in New York and that the franchise agreements complied with New York law.

91.     As a result of Defendants' conduct, Mr. Lee was forced to terminate his Mogetee franchise, causing substantial loss of business opportunities and financial damages exceeding $3,904,090.34.

92.     Due to his involvement with Heytea and the subsequent termination of the Heytea franchise agreements by Defendants, Mr. Lee cannot return to his prior role as the franchisor of Mogetee, thereby causing irreparable harm to his business prospects and reputation.

93.     Defendants' conduct was intended to secure Mr. Lee's investment in the Heytea franchise at the expense of his existing business with Mogetee and to eliminate a competing business.

94.     Defendants' actions were malicious, willful, and undertaken with the intent to harm Mr. Lee's business interests by inducing him to breach his existing franchise agreements based on false pretenses.

95.     As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered and continue to suffer damages including but not limited to:

(i)     Loss of the Mogetee franchise and associated business opportunities; (ii) inability to resume the Mogetee franchise due to the reputational damage and involvement with Heytea; and (iii) financial losses exceeding $3,904,090.34.

**WHEREFORE,** Plaintiffs demand judgment that:

a.     An order compelling Defendants to provide the equipment necessary to open and operate locations in Bayside, Philadelphia, and Austin.

b.     A preliminary injunction, upon Order to Show Cause, prohibiting Defendants from disrupting supplies necessary to operate Plaintiffs' businesses during the pendency of this action.

c.     an accounting and payment of all damages owed to Plaintiffs with statutory interest pursuant to *NY CLS Gen Bus § 691.1*.

d.     Compensation for loss of economic opportunities caused by Defendants' conduct.

e.     Compensatory Damages, Consequential Damages, Special Damages to be awarded by Jury, plus Attorneys' fees, costs and interest to be awarded by the Court as permitted by law.

f.     Punitive damages for Defendants' intentional and fraudulent conduct.

g.     Such other and further relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

96.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs

"1" through "95" of this Complaint under the same force and effect as if fully set forth herein.

97.    To the extent that the Franchise Agreements are deemed void, unenforceable, or otherwise invalid, Plaintiffs assert this cause of action for unjust enrichment.

98.    Plaintiffs conferred a benefit upon Defendants by paying substantial franchise fees, royalties, commissions, and investments totaling more than $3,904,090.34 in reliance on Defendants' representations and promises.

99.    Defendants have been unjustly enriched at the expense of Plaintiffs through their wrongful conduct, including but not limited to obtaining sales data, including market studies, customer contacts, and "know-how" management skills from Plaintiffs' successful operation of the Flushing, Queens location and Brooklyn location.

100.    Mr. Lee has invested significant resources over the years in operating the Mogetee franchise business. Mr. Lee gladly shared the marketable studies he developed with Defendants and tendered $200,000 for an additional ten locations over the U.S.

101.    Defendants' enrichment was achieved directly at Plaintiffs' expense, as Defendants' actions caused Plaintiffs to suffer financial losses and harmed Mr. Lee's established business relationships with his partners and customers.

102.    It would be against equity and good conscience to permit Defendants to retain the benefits they have derived from their wrongful conduct, including the revenue obtained from Mr. Lee and through their exploitations of Mr. Lee's willingness to share with them, especially given they (i) misrepresented their registration status and compliance with New York franchise laws; (ii) terminated the Franchise Agreements without legitimate cause; and (iii) withheld necessary equipment required to operate the franchise locations.

103.    Defendants' conduct was tortious, fraudulent, and undertaken with the intent to

deceive Plaintiffs and unjustly profit from Plaintiffs' investments, sales data, "know-how," and market studies developed over years of experience.

104.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have suffered substantial damages and irreversible harm.

**WHEREFORE,** Plaintiffs demand judgment that:

a.    An order compelling Defendants to provide the equipment necessary to open and operate locations in Bayside, Philadelphia, and Austin.

b.    A preliminary injunction, upon Order to Show Cause, prohibiting Defendants from disrupting supplies necessary to operate Plaintiffs' businesses during the pendency of this action.

c.    an accounting and payment of all damages owed to Plaintiffs with statutory interest pursuant to *NY CLS Gen Bus § 691.1*.

d.    Compensation for loss of economic opportunities caused by Defendants' conduct.

e.    Compensatory Damages, Consequential Damages, Special Damages to be awarded by Jury, plus Attorneys' fees, costs and interest to be awarded by the Court as permitted by law.

f.    Punitive damages for Defendants' intentional and fraudulent conduct.

g.    Such other and further relief as the Court deems just and proper.

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | September 11, 2024 Notice of Termination issued by HK HEYCHA LIMITED to BKDTCT INC. (Brooklyn location) |

| Exhibit | Description |
|---------|-------------|
| B | October 28, 2024 Notice of Termination issued by HK HEYCHA LIMITED affecting all five franchise agreements (Flushing, Bayside, Brooklyn, Philadelphia, Austin) |

Yours etc.,

LAW OFFICES OF DANIEL D. KIM
*Attorneys for Plaintiffs*

By: *Daniel D. Kim*
  Daniel D. Kim
  416 E. Central Blvd., 2nd Fl
  Palisades Park, NJ 07650
  5 Penn Plaza, 23rd Fl.
  New York, NY 10001
  Danieldkimlaw@gmail.com

  Dan Schiavetta, Jr.
  Murphy Higgins & Schiavetta PLLC
  19 Halcyon Terrace
  New Rochelle, NY 10801
  (914)329-7035
  www.mhs-law.com
  dschiavetta@mhs-law.com

Dated: June 26,  2025

Notice of Termination of Franchise Agreement

Dear BKDTCT INC. ,

This letter serves as formal notice that HK HEYCHA LIMITED is terminating the Franchise Agreement dated May 18, 2024, regarding your franchisee business at 52 Willoughby St, Brooklyn, NY 11201, effective immediately. This decision is based on multiple material breaches of the Franchise Agreement by you and your owner, Mr. Li Zheng ("owner"), as outlined below:

1. **Engagement in Competitive Business (Section 7A and Exhibit D of the Franchise Agreement)**: Despite repeated requests and the written commitment, the owner has been continuously engaging in the competing "Moge Tee" tea brand, and failed to divest interests from such brand. This ongoing involvement in a Competitive Business violates the non-compete provisions of our agreement, which explicitly prohibits you and your owners from having any direct or indirect controlling or non-controlling interest as an owner in a Competitive Business. This ongoing involvement constitutes a material breach of our agreement..

2. **Provision of False Financial Information (Section 14B(1) of the Franchise Agreement)**: The personal financial statement the owner provided has been found to contain alterations and misrepresentations, as examined by a certified third party, Guangdong Anzheng Computer Forensic Laboratory. This constitutes a material misrepresentation in the operation of your Franchise Business.

These actions constitute material breaches of Sections 14B(1), 14B(12) and Exhibit D of the Franchise Agreement. Pursuant to Section 14B, we are exercising our right to terminate the Franchise Agreement effective immediately.

As a result of this termination:

1. You must cease all operations of the Franchise Business immediately, including but not limited to the suspension of the opening plan in September 13th, 2024.
2. You must comply with all post-termination obligations as outlined in Section 15 of the Franchise Agreement, including but not limited to de-identification, non-competition, and confidentiality obligations.
3. We reserve the right to pursue any additional remedies available to us under the Franchise Agreement and applicable law.

HK HEYCHA LIMITED
September 11th, 2024

EXHIBIT B

October 28, 2024

CUP OF TEA FLUSHING LLC

BKDTCT INC.

BSCT INC.

PACTEA INC.

AUCT INC.

RE: Notice of Termination of Franchise Agreements

Dear Representatives of the Above-Named Entities:

This letter as formal notification of HK HEYCHA LIMITED's final decision to terminate, effective immediately, the following Franchise Agreements:

1. Franchise Agreement with CUP OF TEA FLUSHING LLC, dated December 1, 2023, for the Main Street store

2. Franchise Agreement with BKDTCT INC., dated May 18, 2024, for the DT Brooklyn store

3. Franchise Agreement with BSCT INC., dated July 11, 2024, for the BAYSIDE store

4. Franchise Agreement with PACTEA INC., dated July 31, 2024, for the PA Chinatown store

5. Franchise Agreement with AUCT INC., dated July 22, 2024, for the AUSTIN UT store

This termination is necessitated by multiple material breaches of the aforementioned Agreements, including but not limited to:

1. **Material Non-Disclosure and Violation of Non-Compete Provisions:** During the initial interview process and throughout our partnership, the owner disclosed ongoing involvement with the "Moge Tee" brand. This engagement directly violates our exclusive cooperation requirement and the non-compete provisions stipulated in our Franchise Agreements. Despite repeated assurances from the owner to terminate the relationship with Moge Tee, no supporting documentation was ever provided to confirm this termination. It was only during our recent investigation that we received the letter revealing the termination of your relationship by Moge Tee. This letter revealed multiple violations of Moge Tee's management policies by your owner. These crucial facts were never disclosed to us during our partnership. This pattern of non-disclosure and lack of transparency has severely impaired our ability to accurately assess the qualifications and suitability of the owner as a franchise partner. Moreover, this ongoing pattern of concealment fundamentally undermines the trust upon which our franchise relationship was built and demonstrates a lack of the integrity and transparency required by our Franchise Agreement. In conclusion, your engagement directly violates our exclusive cooperation requirement and the non-compete provisions stipulated in our Franchise Agreements, and undoubtedly constitutes a fundamental breach of the Franchise Agreements.

2. **Misrepresentation of Financial Statements:** The personal financial statements provided by the owner have been found to contain significant alterations and misrepresentations. This conclusion is based on an examination conducted by a certified third party, Guangdong Anzheng Computer Forensic Laboratory. This constitutes a material misrepresentation in the operation of your Franchise Business and a clear violation of our agreement terms. Such misrepresentation violates the obligation

of integrity stipulated in our Franchise Agreement and misleads our evaluation of your fitness as qualified franchise partners during both the initial signing and performance process.

3. **Breach of Development Commitments:** As documented in the email correspondence dated September 12, 2024, your entities agreed to suspend all development activities for the Austin UT, Philly Chinatown, and Bayside locations. However, you have unilaterally proceeded with renovation and opening schedules for these locations. This action directly contravenes our mutual agreement and demonstrates a disregard for contractual obligations.

The cumulative effect of these breaches renders your entities fundamentally unsuitable as franchise partners. These actions demonstrate a pattern of non-compliance, misrepresentation, and disregard for contractual obligations that irreparably damages the trust and integrity essential to our franchisor-franchisee relationship.

As a consequence of these material breaches, we hereby exercise our right to terminate the Agreements with immediate effect pursuant to Art.14B of the Franchise Agreements. You are directed to:

1. Cease all operations under our brand name forthwith by November 4, 2024， including shutting down any currently operating stores and halting all preparations for stores in development. This requires ending all sales, customer interactions, planning, construction, and use of our branding.

2. Comply with all post-termination obligations as outlined in Section 15 of the Franchise Agreement, including but not limited to de-identification, non-competition, and confidentiality obligations. At all times during the execution of these post-termination obligations. Any actions that damage our company's image or reputation will be regarded as further breaches and addressed accordingly.

We reserve the right to pursue any additional remedies available to us under the Franchise Agreement and applicable law.

Sincerely,

HK HEYCHA LIMITED